UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILSON RODRIGUEZ,<br>    Plaintiff,<br><br>v.<br><br>PAMELA BONDI, KRISTI NOEM, and<br>PATRICIA HYDE,<br>    Defendants. | C.A. No. 25-cv-406-JJM-PAS |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Chief Judge.

Before the Court is Wilson Rodriguez's combined habeas corpus petition under 28 U.S.C. § 2241 and a motion for a temporary restraining order. ECF No. 1. Mr. Rodriguez challenges the lawfulness of his detention by Immigration and Customs Enforcement ("ICE") and seeks an order releasing him from ICE custody. *Id.* The Government moved to dismiss Mr. Rodriguez's case for lack of subject matter jurisdiction and failure to exhaust his administrative remedies. ECF No. 6. For the reasons stated herein, the Court GRANTS Mr. Rodriguez's petition, and DENIES the Government's Motion to Dismiss.

I.     BACKGROUND

A. Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA") authorizes the government to detain certain noncitizens pending a decision on whether to remove them from the country. *See* 8 U.S.C. § 1226; *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Section 1226(a) of the INA provides for discretionary detention, whereas Section 1226(c) provides for mandatory detention. *See Hernandez-Lara v. Lyons*, 10 F.4th 19, 26-27 (1st Cir. 2021). As relevant here, the discretionary detention provision permits—but does not require—the government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General" or their designees. 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1) (2025); *see Jennings*, 583 U.S. at 303. If the government arrests a noncitizen on such a warrant, the Attorney General or their designees may then continue to detain them or release them on bond of at least $1,500 or conditional parole. 8 U.S.C. §§ 1226(a)(1)-(2); 8 C.F.R. § 236.1(c)(8) (2025); *see Hernandez-Lara*, 10 F.4th at 24 n.1.

An ICE officer "makes the initial determination for noncitizens subject to detention." *Hernandez-Lara*, 10 F.4th at 26. If the officer opts for continued detention, the noncitizen has the right to seek review of that decision at a bond hearing (also known as a "custody redetermination" hearing) before an immigration judge ("IJ"). *Id.* at 26. Bond may be denied only if the government "either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* at 41. If the government fails to meet that burden, bond or conditional parole must be granted. *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025). However, if the government does meet its burden and the IJ determines that the noncitizen must

remain in custody, the noncitizen may appeal the immigration court's decision to the Board of Immigration Appeals ("BIA").  8 C.F.R. §§ 1003.19(f), 1003.38.

### B. Factual Background

Mr. Rodriguez is a citizen of Guatemala.  ECF No. 1 at 1.  On July 28, 2017, he entered the United States on a B-2 visa that permitted him to remain in the country for one year.  ECF No. 8 at 1.  At the end of the year, Mr. Rodriguez did not return to his home country but instead remained in Rhode Island.  *Id.* at 2; ECF No. 6 at 2.  Subsequently, Mr. Rodriguez filed an asylum application, asserting that he could not go back to Guatemala because he and his family had received threats from MS-13 while living there.[1]  ECF No. 1 at 1; ECF No. 8 at 1.  His application remains pending at this time.  ECF No. 8 at 1.

On July 24, 2025, the Rhode Island State Police arrested Mr. Rodriguez for a charge of Driving Under the Influence ("DUI").  *Id.* at 2.  He was arraigned on this charge in state court.  ECF No. 6 at 2.  The state court ultimately released Mr. Rodriguez on personal recognizance, finding that he did not pose a flight or safety risk.  ECF No. 8 at 2.

As he was leaving the courthouse, an ICE officer arrested Mr. Rodriguez, claiming he was in violation of federal immigration laws.  *Id.*; ECF No. 6 at 2.  ICE detained Mr. Rodriguez in its field office in Providence, Rhode Island pursuant to 8

---

[1] In his petition, Mr. Rodriguez incorrectly claimed that he had been granted asylum.  ECF No. 1 at 1, 3.  He later corrected that statement, clarifying that he applied for asylum on November 21, 2017, and that the application remains pending without disposition.  ECF No. 8 at 1.

3

U.S.C. § 1226.[2]  While there, ICE issued him a Notice to Appear, charging him with being subject to removal under 8 U.S.C. § 1227(a)(1)(B).[3]  *Id.*  ICE later transferred Mr. Rodriguez to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island, where he has remained since August 15, 2025.  *Id.*

While in detention, Mr. Rodriguez requested a bond hearing before an IJ.  *Id.*  The immigration court issued a notice of a bond hearing to be held on August 28, 2025.  *Id.*  On that date, Mr. Rodriguez—through immigration counsel—withdrew his request for that hearing.  *Id.*

On August 18, 2025, Mr. Rodriguez filed the present petition, seeking release from custody and a declaratory judgment that his detention violates his procedural due process rights.  ECF No. 1 at 5.  In addition, Mr. Rodriguez requested that the Court prevent his transfer outside the District of Rhode Island while the matter is pending.  *Id.* at 1.  In an earlier order, the Court granted the latter request, directing the government not to move Mr. Rodriguez outside of the state without providing it with "at least 72 hours advance notice of the move and the reason therefore."  ECF No. 3.  The government objects to Mr. Rodriguez's request for further relief.  ECF No. 6.

---

[2] The government's briefing does not explicitly state whether Mr. Rodriguez is subject to discretionary detention pursuant to 8 U.S.C. § 1226(a) or mandatory detention pursuant to 8 U.S.C. § 1226(c).  Given that § 1226(c) applies to noncitizens convicted of specified crimes and Mr. Rodriguez has not been convicted of a crime, it is clear he is subject to discretionary detention.  *See Hernandez-Lara*, 10 F.4th at 35.

[3] 8 U.S.C. § 1227(a)(1)(B) renders a noncitizen removable if they overstay their visa.  *See Rosa v. Garland*, 114 F.4th 1, 5 (1st Cir. 2024).

4

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

Before addressing the merits of Mr. Rodriguez's request for relief, the Court must first establish its jurisdiction over this matter. The government argues that this case ought to be dismissed under Federal Rule of Civil Procedure 12(b)(1) because Mr. Rodriguez has failed to make a showing that the Court has subject matter jurisdiction over his claim. ECF No. 6 at 1, 8. In his petition, however, Mr. Rodriguez made clear that he was seeking relief "pursuant to 28 U.S.C. § 2241, which authorizes federal courts to grant writs of habeas corpus where a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" ECF No. 1 at 2 (quoting 28 U.S.C. § 2241).

Mr. Rodriguez is correct in that he brings precisely the type of claim that the First Circuit has repeatedly held to be within this Court's jurisdiction. *See, e.g., Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 11 (1st Cir. 2007) ("[D]istrict courts retain jurisdiction over challenges to the legality of detention in the immigration context."); *Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir. 1998) (noting that noncitizens "in custody of federal immigration officials have traditionally been able to obtain review of immigration decisions by petitioning for a writ of habeas corpus under … § 2241").

The Court is thus satisfied that it properly exercises subject-matter jurisdiction over this matter.

## B. Exhaustion of Administrative Remedies

The Government next argues that Mr. Rodriguez's claim is premature because he has not exhausted his administrative remedies before filing his habeas petition. ECF No. 6 at 1, 5-6. Specifically, the Government contends that, because Mr. Rodriguez withdrew his request for a bond hearing before an immigration judge, he "has not attempted to exercise the administrative remedies available to him and has therefore not exhausted them." *Id.* at 6. The Government further claims that, before this Court considers his habeas petition, the BIA should first be given the opportunity to correct any potential errors if he proceeds with a bond hearing in immigration court. *Id.*

In response, Mr. Rodriguez asserts that the administrative exhaustion requirement should be waived due to exceptional circumstances in his case. ECF No. 8 at 4. He states that if he remains detained during the pendency of his criminal case, he will be unable to appear in court, which would result in a procedural default or conviction that would significantly strengthen ICE's grounds for removing him from the United States. *Id.* As he puts it, this presents a "catch-22 situation" where his continued detention prevents him from defending himself in criminal court, which in turn makes it easier for the Government to justify his deportation. *Id.*

"There are two species of exhaustion: statutory and common-law." *Brito v. Garland*, 22 F.4th 240, 255 (1st Cir. 2021). Statutory exhaustion deprives a federal court of jurisdiction, whereas common-law exhaustion "cedes discretion to a [federal] court to decline the exercise of jurisdiction." *Id.* (quoting *Anversa v. Partners*

6

*Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). Here, no statute requires exhaustion. *See, e.g.*, *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827, at *5 (D. Mass. Aug. 19, 2025); *Gomes*, 2025 WL 1869299, at *4-5.

Instead, this case is governed by the "more permissive" common-law exhaustion standard. *Brito*, 22 F.4th 240 at 256; *see also Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997) ("[C]ourts have more latitude in dealing with exhaustion questions when Congress has remained silent[.]"). While "the exhaustion doctrine ordinarily 'serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency,' and thus, should customarily be enforced," there are "'circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion.'" *Portela-Gonzalez*, 109 F.3d at 77 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145-46 (1992)).

A court may consider relaxing the exhaustion requirement, for instance, "if the situation is such that 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim….'" *Id.* (quoting *McCarthy*, 503 U.S. at 147). Another factor to consider is that "it sometimes may be inappropriate for a court to require exhaustion if a substantial doubt exists about whether the agency is empowered to grant meaningful redress." *Id.* (citing *McCarthy*, 503 U.S. at 147-48; *Gibson v. Berryhill*, 411 U.S. 564, 575 n.14 (1973)). "An agency, for example, may lack authority to grant the type of relief requested." *Id.* (citing *McNeese v. Board of Educ.*, 373 U.S. 668, 675 (1963)).

7

Taking these factors into consideration, the Court finds that waiver is appropriate here. First, Mr. Rodriguez is being held in an ICE detention facility against his will without clear reason. This loss of liberty clearly constitutes irreparable harm. *See Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) ("Obviously, the loss of liberty is a … severe form of irreparable injury."); *see also Brito*, 22 F.4th at 256 (noting that "exhaustion might not be required if [the petitioner] were challenging her incarceration … or the ongoing deprivation of some other liberty interest") (quoting *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986)). As Mr. Rodriguez also notes, he may be subject to further irreparable harm if he remains detained and is unable to participate in his criminal proceedings. ECF No. 8 at 4. His inability to appear in court could result in a default conviction against him, which strengthens the Government's grounds for removing him from the United States. *Id.*

Second, Mr. Rodriguez challenges the constitutionality of his detention, which is an area in which the Immigration Court and the BIA lack any authority to adjudicate. *See Flores-Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (citing *Ashley v. Ridge*, 288 F. Supp. 2d 662, 666-67 (D.N.J. 2003) ("The Immigration Court and the Board of Immigration Appeals are courts of limited jurisdiction that cannot consider constitutional claims.")). Even if Mr. Rodriguez withdrew his request for a bond hearing, it would be futile to require him to proceed with one when such a proceeding cannot in any way address the due process claim at issue in this case. *See Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, 2025 WL

8

2809996, at *4 n.2 (D. Mass. Oct. 3, 2025) (waiving exhaustion requirement despite government's argument that detainee failed to exhaust his administrative remedies by not asking IJ for bond hearing because "further agency proceeding would be futile"); *see also Barton v. Ashcroft*, 171 F. Supp. 2d 86, 91-92 (D. Conn. 2001) (finding exhaustion of administrative remedies "futile" on noncitizen's equal protection claim because of IJ's and BIA's limited authority)).

Accordingly, the Court waives any exhaustion requirement and proceeds to the merits of Mr. Rodriguez's petition.

### C. Due Process

The Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause applies to all persons in the United States regardless of citizenship status. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether Mr. Rodriguez's detention violates procedural due process, courts apply the three-part *Mathews* balancing test. *See Hernandez-Lara*, 10 F.4th at 27-28 (citing *Mathews v. Eldrige*, 424 U.S. 319 (1976)). Under *Mathews*, a court considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

### a. Private Interest

Here, Mr. Rodriguez's private interest is strong. He is asserting "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Other cases have noted that, "while detention during deportation proceedings undoubtedly is 'a constitutionally valid aspect of the deportation process,' this does not diminish [the detainee's] liberty interest." *Bermeo Sicha*, 2025 WL 2494530, at *6 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)).

Prior to his detention, Mr. Rodriguez lived with his wife and three children in Rhode Island. ECF No. 8 at 2, 5. Though he was charged with a DUI, the state court determined that he posed no flight risk or danger to the community and released him on personal recognizance. *Id.* at 2. ICE arrested him as he was leaving the courthouse, and he has been detained ever since. "'There is no question' that such detention constitutes 'a substantial deprivation of liberty.'" *Bermeo Sicha*, 2025 WL 2494530, at *6 (quoting *Hernandez-Lara*, 10 F.4th at 28).

As such, the first prong of the *Mathews* test weighs in Mr. Rodriguez's favor.

### b. Risk of Erroneous Deprivation

The second factor—the risk of erroneous deprivation of Mr. Rodriguez's liberty interest—is also strong. First, the Rhode Island state court has already determined that Mr. Rodriguez does not pose a flight or safety risk, which the Government does not contest. *See, e.g.*, *Chang Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025) (finding that "risk of erroneous deprivation"

10

was large where government made no showing that noncitizen detainee presented public safety or flight risk).

Second and more importantly, by being detained, Mr. Rodriguez might very well lose the opportunity to defend himself in criminal court. ECF No. 8 at 2. With respect to his DUI charge, Mr. Rodriguez asserts that, based on new discovery, he believes that probable cause did not exist for his stop by police. *Id.* However, if he remains in ICE custody, he argues that he will be unable to appear in court and present his defense, which would result in a default conviction against him. *Id.* at 4.

Mr. Rodriguez is correct. Currently, he is subject to discretionary detention pursuant to 8 U.S.C. § 1226(a). However, if he is convicted of a criminal offense, then he would be subject to mandatory detention pursuant to § 1226(c). *See Reid v. Donelan*, 17 F.4th 1, 4 (1st Cir. 2021) (citing 8 U.S.C. § 1226(c)). At the very least, this creates the risk of Mr. Rodriguez being detained for an even longer period, which in turn increases the liberty interest at stake.

Accordingly, the second prong of the *Mathews* test also weighs in Mr. Rodriguez's favor.

### c. Government Interest

The final *Mathews* factor concerns the Government's interest. The Government argues only that Mr. Rodriguez's detainment is presumptively reasonable because it has not exceeded six months. *See* ECF No. 6 at 7-8 (citing *Zadvydas*, 533 U.S. at 689; *Zavala v. Martin*, No. 21-500 WES, 2022 WL 684147, at 3 (D.R.I. Mar. 8, 2022)). It does not provide further rationale as to why Mr. Rodriguez

11

ought to be detained—just that it is "presumptively reasonable." *Id.* Importantly, the First Circuit has cautioned against "unnecessary detention," stating that it "imposes substantial societal costs," as it "'separates families and removes from the community breadwinners, caregivers, parents, siblings and employees.'" *Hernandez-Lara*, 10 F.4th at 33 (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020)).

Under these circumstances, the governmental interest advanced by continuing to detain Mr. Rodriguez does not appear weighty, especially when measured against his strong liberty interest and the risk of error in depriving him of that liberty. *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sept. 9, 2025) (finding due process violation in government's detainment of noncitizen where third *Mathews* factor is strongly outweighed by other two). Likewise, the public interest does not favor such "unnecessary detention." *Hernandez-Lara*, 10 F.4th at 33.

The balance of the *Mathews* factors favors Mr. Rodriguez. Accordingly, his detention violates his Fifth Amendment due process rights, and he is entitled to immediate release from ICE custody.

### III. CONCLUSION

For the foregoing reasons, Mr. Rodriguez's petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED. ECF No. 1.

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr.
Chief Judge
United States District Court


October 10, 2025

13